IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01749-RBJ

CECO CONCRETE CONSTRUCTION, LLC,

      Plaintiff,

v.

CENTENNIAL STATE CARPENTERS PENSION TRUST,

      Defendant.

---

CENTENNIAL STATE CARPENTERS PENSION TRUST, and
BOARD OF TRUSTEES OF THE CENTENNIAL STATE CARPENTERS PENSION TRUST

      Counter-Plaintiffs,

v.

CECO CONCRETE CONSTRUCTION, LLC,

      Counter-Defendant.

---

## ORDER on POST-TRIAL MOTIONS

---

      This order addresses three post-trial motions, each of which has been fully briefed.  For the reasons set forth herein, plaintiff's motion for reconsideration is granted in part and denied in part.  Plaintiff's motion to amend the judgment is granted.  Defendant's motion to stay enforcement of the judgment pending appeal is granted.

## BACKGROUND

      Plaintiff, Ceco Concrete Construction, LLC, filed this case on July 3, 2013, seeking to

enforce an arbitration award entered pursuant to 29 U.S.C. §1401(a)(1) of the Multiemployer Pension Plan Amendment Act of 1974 ("MPPAA"), an amendment of the Employee Retirement Income Security Act of 1974 ("ERISA").  Defendant/counter-plaintiffs, Centennial States Carpenters Pension Trust and its Board of Trustees, counterclaimed, asking the Court to overturn the arbitrator's decision.

On December 18, 2014 this Court issued an order on the parties' cross-motions for summary judgment, granting plaintiff's motion and denying defendant's motion.  ECF No. 43. That order sets forth the relevant facts in some detail, and I will not repeat that recitation here. On the same day the Clerk's Office issued the Court's Final Judgment consistent with the summary judgment order.  ECF No. 44.

Thereafter Ceco filed a motion to reconsider the order and judgment to the extent the Court had denied its request for an award of attorney's fees and costs.  ECF No. 45.  Ceco also filed a motion to amend the (form of) the judgment.  ECF No. 46.  Defendant/counter-plaintiffs filed a notice of appeal and a motion to stay enforcement of the judgment without the posting of a supersedeas bond.  ECF Nos. 47 and 53.

On February 4, 2015 the Tenth Circuit issued an order abating the appeal pending this Court's disposition of plaintiff's motion to amend the judgment.  ECF No. 55.  Briefing on that motion was completed the next day.  Briefing on all three post-trial motions was completed upon the filing of defendant's reply in support of its motion to stay on February 20, 2015.

On May 6, 2015, after receiving a status report from the parties, the Tenth Circuit issued an order indicating that the appeal would remain abated until this Court disposed of Ceco's motion to amend the judgment.  This order resolves that motion and the other pending post-trial motions.

# RESOLUTION OF MOTIONS

## A. **Plaintiff's Motion for Reconsideration [ECF No. 45].**

Ceco asks the Court to reconsider its decision not to award attorney's fees or costs

pursuant to 29 U.S.C. § 1451(e).  Ceco argues, correctly, that by addressing the fees and costs

issue in its decision on the merits of the appeal, Ceco did not have an opportunity to brief the

issue.  Accordingly, I agree that it is reasonable for the Court to reconsider the issue now that the

parties have fully briefed it.

The statute provides, "[i]n any action under this section, the court may award all or a

portion of the costs and expenses incurred in connection with such action, including reasonable

attorney's fees, to the prevailing party." *Id.*  In its order on the merits of the appeal this Court

noted that neither the statute nor the Tenth Circuit had provided guidance in applying this

provision.  ECF No. 43 at 21.  The Court therefore elected to follow the factors listed in *Trustees*

*of Utah Carpenters' & Cement Masons' Pension Trust v. Loveridge*, No. 2:10-CV-00809-DS,

2013 WL 3994677, at *1 (D. Utah Aug. 5, 2013) *aff'd*, 567 F. App'x 659 (10th Cir. 2014) in

deciding whether to award fees:

> the degree of the opposing parties' culpability or bad faith, the ability of the
> opposing parties to personally satisfy an award of attorney's fees, whether an
> award of attorney's fees against the opposing parties would deter others from
> acting under similar circumstances, whether the parties requesting fees sought to
> benefit all participants and beneficiaries of an ERISA plan or to resolve a
> significant legal question regarding ERISA, [and] the relative merits of the
> parties' positions.

The Court found that this case involved significant legal questions about the applicability of

certain ERISA provisions, and that it did not find that the defendant/counter-plaintiffs challenged

the arbitrator's findings in bad faith.  The Court found that the Trust likely could satisfy an award

of fees, but that the balance of the *Loveridge* factors weighed in defendant's favor.  *Id.* at 22.

In the present motion Ceco argues that, in the absence of Tenth Circuit precedent, this Court should follow the lead of the Seventh Circuit and award attorney's fees unless defendant/counter-plaintiffs' position was "substantially justified."  *See Continental Can Co., Inc. v. Chicago Truck Drivers*, 921 F.2d 126, 127 (7th Cir. 1990) (finding that this standard applies both to § 1451(e) and another fee-shifting statute in ERISA, 29 U.S.C. § 1132(g)(1)). Ceco apparently was not aware, however, that literally four days after this Court issued its order, a panel of the Tenth Circuit enunciated a standard.  *Trustees of the Eighth District Electrical Pension Fund v. Wasatch Front Electrical and Construction, LLC*, 598 F. App'x 563, 565–66 (10th Cir. 2014) (unpublished) (affirming the district court's award of attorney's fees under either 29 U.S.C. § 1451(e) or 29 U.S.C. § 1132(q)(1) without deciding which statute governed). Specifically, the court held:

> To determine if a party should be awarded attorneys' fees for a withdrawal liability claim, the district court must weigh five factors:
>
> 1. the degree of the opposing parties' culpability or bad faith,
>
> 2. the opposing parties' ability to satisfy an award of attorneys' fees,
>
> 3. the deterrence of a fee award on other parties considering similar claims in the future,
>
> 4. whether the parties requesting fees sought either to resolve a significant legal question regarding the Employee Retirement Income Security Act or to benefit all participants and beneficiaries of an ERISA plan, and
>
> 5. the relative merits of the parties' positions.

*Id.* (citing *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013)).

The court added that "[n]o single factor is dispositive."  *Id.* at 566.

Defendant/counter-plaintiffs argue, correctly, that an unpublished opinion does not constitute binding precedent.  However, it may be cited for its persuasive value.  10th Cir. R. 32.1.  The factors listed in *Wasatch* are similar to those I used in this case, and unsurprisingly, I

find *Wasatch* to be persuasive.  Applying the five factors, I make the following findings:

First, I do not find (and Ceco does not argue) that defendant/counter-plaintiffs acted in bad faith in appealing the arbitrator's decision.  The MPPAA, 29 U.S.C. § 1401(b)(2) expressly authorizes any party to bring an action in the appropriate district court to enforce, vacate or modify an arbitrator's award.  Ceco sued to enforce the award.  Defendant/counter-plaintiffs counterclaimed to vacate the award.  Both parties accepted essentially all of the arbitrator's findings of fact.  The parties recognized that there were disputes of law, both as to the applicable standard of review and as to the merits of Ceco's claim that it had no withdrawal liability.  There was no clear precedent as to any of defendant/counter-plaintiffs' three arguments for reversal of the arbitrator.

Second, defendant/counter-plaintiffs plainly could pay the fees and costs requested.  This is evident from their motion, discussed *infra,* for a stay of execution of this Court's judgment without the posting of a supersedeas bond.  This factor supports Ceco's position.

Third, I do not find that a fee award would likely deter similar claims or appeals in the future.  For one thing, the amount requested is relatively small.  Moreover, this Court's resolution of the issues, and more importantly the Tenth Circuit's resolution of the pending appeal, will probably create precedents that will probably be more significant than a fee award in deterring similar claims.

Fourth, the party requesting fees (Ceco) did seek to resolve significant legal issues.  But the party opposing fees (the Trust) similarly sought to resolve significant legal issues, and, in doing so, sought to benefit participants and beneficiaries in an ERISA plan.

Fifth, although this Court ultimately resolved the issues in Ceco's favor, as had the arbitrator, I find that reasonable minds could differ on the outcome.  This was by no means an

open and shut case.

Based primarily on the first, fourth and fifth factors, I stand by my decision not to award fees or costs under 29 U.S.C. § 1451(e).

Nor do I agree with Ceco's suggestion, made primarily in its reply brief, that a different result would follow under 29 U.S.C. § 1132(g)(1). That statute provides, "in any action under this title (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Id.* Thus, unlike 29 U.S.C. § 1451(e), a court may award fees to "either party," not just the "prevailing party," under § 1132(g)(1). However, the fee claimant still must show "some degree of success on the merits" to be eligible for an award under § 1132(g)(1). *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (internal quotation marks and citation omitted). That having been shown, the Court held that the Fourth Circuit's five-factor test was not necessarily foreclosed by § 1132(g)(1). *See id.* at 255 n.8. Obviously Ceco has shown success on the merits. Therefore, the five-factor test articulated in *Wasatch* is a reasonable standard under either statute as applied to the present case. *See also Anita Founds, Inc. v. ILGWU Nat's Ret. Fund*, 902 F.2d 185, 189 (2nd Cir. 1990) (applying the five-factor test originally adopted under § 1132(g)(1) to § 1451(e) and citing other similar cases).

I do agree, however, the Ceco should be awarded its costs pursuant to Fed. R. Civ. P. 54 (d)(1) and D.C. COLO.LCivR 54.1. Such an award to the prevailing party is mandatory unless a federal statute, the rules of procedure or a court order provides otherwise. The bill of costs should be filed on the form provided by the Clerk's Office within 14 days after entry of the Amended Final Judgment.

**B.  Plaintiff's Motion to Amend [ECF No. 46].**

In its order on the parties' cross-motions for summary judgment the Court ordered the defendant, meaning the Trust defendant, to "refund all withdrawal liability payments made by Plaintiff/Counter-Defendant, together with interest from the date of each quarterly payment pursuant to 29 C.F.R. § 4219.31(d)."  ECF No. 43 at 22.  This in turn was reflected in the Final Judgment issued by the Clerk of Court.  ECF No. 44.  Ceco now asks this Court to amend the judgment in two ways: (1) specify that judgment is entered against both the Trust (to which Ceco refers as "the Plan" in its motion) and the Board and (2) specify the amount of the judgment against the Trust, including the amount of interest accrued prior to January 1, 2015.

As for the first request, the Court agrees that, in light of its earlier Order denying defendant/counter-plaintiffs' motion for summary judgment, judgment should be ordered in favor of Ceco and against both the Trust and the Board (although the monetary award is properly entered as only against the Trust).  It does not appear that defendant/counter-plaintiffs oppose this clarification, as it is not mentioned in their response.  *See* ECF No. 54.

Turning to the amount of the judgment against the Trust, defendant/counter-plaintiffs' only point in opposition to Ceco's request is that the issue might better be addressed after the resolution of the parties' appeal.  ECF No. 54 at 1.  However, even though the Court later in this order grants defendant/counter-plaintiffs' motion to stay the judgment pending appeal without requiring the Plan to post a bond, it may be helpful to the parties at this time for the Court to identify more definitely the amount of the judgment against the Trust.

The process for doing so is a bit complicated.  As detailed in this Court's previous Order [ECF No. 43], Ceco paid the Plan a total of $348,273.00 during the period in which the parties were engaged arbitration, and it is thus owed back this amount plus interest.  The $348,273.00 was paid in nine installments of $38,697.00, which were mailed to the Trust between March

2011 and March 2013.  ECF No. 46-1, Ex. A.  Ceco is entitled to recover $348,273.00 plus

interest from the date of each quarterly payment, as laid out in 29 C.F.R. § 4219.31(d).  ECF No.

43 at 22.  Under that provision, since there is no evidence suggesting that the Plan established its

own interest rate pursuant to 29 C.F.R. § 4219.33, the interest rate is determined under 29 C.F.R.

§ 4219.32(b):

> [I]nterest . . . shall be charged or credited for each calendar quarter at an annual
> rate equal to the average quoted prime rate on short-term commercial loans for the
> fifteenth day (or next business day if the fifteenth day is not a business day) of the
> month preceding the beginning of each calendar quarter," as reported by the
> Board of Governors of the Federal Reserve System in Statistical Release H.15
> ("Selected Interest Rates").

As Ceco points out, this rate on each date relevant here was 3.25%.  *See* ECF No. 46-1 at 3

(citing http://www.federalreserve.gov/releases/H15/data.htm, Selected Interest Rates (Daily) -

H.15: Bank prime loan, Business day frequency).

Next, the Court must apply this annual rate to each payment for the time period beginning

when the payment was made.  Under 29 C.F.R. § 4219.32(c),

> The interest rate under paragraph (b) of this section is the nominal rate for any
> calendar quarter or portion thereof.  The amount of interest . . . due the employer
> for overpayment, is equal to the overdue, defaulted, or overpaid amount
> multiplied by:
> (1) For each full calendar quarter in the period from the due date (or date of
> overpayment) to the date paid (or date of refund), one-fourth of the annual rate in
> effect for that quarter;
> (2) For each full calendar month in a partial quarter in that period, one-twelfth of
> the annual rate in effect for that quarter; and
> (3) For each day in a partial month in that period, one-three-hundred-sixtieth of
> the annual rate in effect for that month.

29 C.F.R. § 4219.32(c).  The Court has computed the interest accordingly and finds it to be

$31,312.05 for the period beginning with Ceco's first payment and running through December

31, 2014.[1]  In reaching this result, the Court used the same methodology employed by Ceco in ECF No. 46-1, Ex. A, to which the Trust does not appear to object save for its statement that "the sums on Exhibit A . . . appear to be incorrect, perhaps due to rounding errors."  ECF No. 54 at 1 n.1.  The Court finds no errors in Ceco's calculation beyond the one described in note 1, *supra*, and I therefore conclude that $31,312.05 is the correct amount of interest accrued through December 31, 2014.

### C.  Defendant/Counter-Plaintiffs' Motion for Stay Pending Appeal [ECF No. 53].

The dispute is not over a stay of enforcement of this Court's order, as such, but whether it should be granted without requiring defendant/counter-plaintiffs to post a bond.  Under Fed. R. Civ. P. 62(d), the appellant, here defendant/counter-plaintiffs, may obtain a stay by supersedeas bond.  A bond is normally required, but the district court has "inherent discretionary authority in setting supersedeas bonds."  *Miami Intern. Realty Co. v. Paynter,* 807 F.2d 871, 873 (10th Cir. 1986).

The purpose of the bond "is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency."  *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1559 (10th Cir. 1996) (internal quotation marks omitted).  In a frequently cited case, the Seventh Circuit listed five factors to be considered by district courts when deciding whether to waive the bond requirement: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment . . . ; (4) whether the

---

[1] This number is very close to Ceco's calculation of $31,308.56.  The difference comes from the calculation of daily interest on the 2nd payment, which cleared on June 27, 2011.  Ceco calculates it as $10.48, or three days' worth of interest.  ECF No. 46-1, Ex. A.  However, in line with the rest of the daily calculations, this number should reflect four days' worth of interest, including interest accruing on the 27th.  Thus, the correct amount of daily interest on the 2nd payment is $13.97.  This difference of $3.49 accounts for the difference between Ceco's calculation and that of the Court.

defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of

money; and (5) whether the defendant is in such a precarious financial situation that he

requirement to post a bond would place other creditors of the defendant in an insecure position."

*Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988).  *See Ground Improvement*

*Techniques, Inc. v. Morrison Knudsen Corp.*, No. 95-cv-02510-JLK-BNB, 2007 WL 1232090, at

*2–3 (D. Colo. April 26, 2007) (applying the five *Dillon* factors).

The amount of the judgment against the Trust, including interest through December 31,

2014, is $379,585.05.  If the judgment is affirmed, the amount of the judgment will increase

somewhat due to further accumulation of interest.  In support of their motion defendant/counter-

plaintiffs submitted the Declaration of Pati Piro, Vice President of Associated Third Party

Administrators, which serves as the third-party administrator and maintains the bank accounts

and financial records of the defendant Trust, as evidence that as of December 31, 2014 the Trust

held approximately $131,575,094 in assets.  ECF No. 53-1 at ¶3.  This figure was based on the

market value of assets based upon unaudited financial statements.  However, the value of the

Trust's assets as of December 31, 2013 and 2012, respectively—based upon audited financial

statements—was $125,168,939 and $108,235,271.  *Id.*

Ms. Piro adds that the Trust currently pays approximately $10 million in annual pension

benefits and receives approximately $5 million annually from companies employing union-

represented Colorado carpenters.  The Trust also earns income on its professionally managed

investment portfolio.  Therefore, the Trust's assets typically grow each year, as they did from

2012 to 2013 to 2014.  *Id.* at ¶4.

According to Ms. Piro, the Trust could readily pay the full amount of the judgment.  *Id.* at

¶5.  Moreover, the Trust's actuaries at Segal Consulting prepare an annual actuarial valuation

and certification of the Trust's funded status and future funding projections.  It has never been

classified as having an "endangered," "seriously endangered," or "critical" funding status.

Rather, it is classified as "green zone" and "safe status" under the federal Pension Protection Act.

*Id.* at ¶6.

In response Ceco notes that defendant/counter-plaintiffs did not provide evidence

regarding the burden that would be imposed by the requirement for a supersedeas bond.  ECF

No. 57 at 2.  Ceco also seems to question the bona fides of Ms. Piro, commenting that no entity

called "Associated Third Party Administrators" is registered to do business in Colorado, and that

Ms. Piro had not disclosed the nature of the Trust's assets.  *Id.* at 2–3.  In reply

defendant/counter-plaintiffs provide a Second Declaration of Ms. Piro.  ECF No. 59-1.  She

provides additional information about her company, including its size, locations, services, areas

of business, and national scope, *id.* at ¶¶3–4, adding that her company took over administration

of the Trust on January 1, 2014, *id.* at ¶1.

Applying the *Dillon* factors, the Court finds:

First, the Court has been given no reason to believe that the collection process would be

unusual or unduly complicated.

Second, the Court has been given no reason to believe that the collection process would

be unusually or unduly time consuming.

Third, defendant/counter-plaintiffs have provided what appears to be competent evidence

that the Trust has assets (and income) many times the likely amount of the judgment.  I agree

that the Trust did not provide detail as to the nature of its assets, but given the apparent personal

knowledge of Ms. Pico and the amount of the assets to which she swears (the December 31,

2014 figure is approximately 347 times the amount of the judgment as of that date), I do not find

that further detail is necessary.  I note as well that Ceco has raised no credible concern about the Trust's ability to satisfy the judgment.

Fourth, although defendant/counter-plaintiffs have not indicated the likely costs of a supersedeas bond (and I do not doubt that the Trust could afford it, whatever the cost), based on the evidence submitted, the Trust's ability to pay the judgment is sufficiently plain such that the cost of a supersedeas bond would amount to a waste of resources.

Fifth, the posting of a bond would not put other creditors at risk, but that is not a reason to require a bond in the present circumstances.

It appears to the Court that Ceco's objection to the waiver of the bonding requirement is not genuinely fueled by its concern about its ability to collect its judgment if the judgment is affirmed on appeal.  For the reasons stated, the Court grants defendant/counter-plaintiffs' motion.

## ORDER

1.  Plaintiff Ceco Concrete Construction, LLC's Motion for Reconsideration [ECF No. 45] is GRANTED IN PART AND DENIED IN PART.  It is denied insofar as it seeks awards of attorney's fees and costs pursuant to 29 U.S.C. § 1451(e) or 29 U.S.C. § 1132(g)(1).  It is granted to the extent that it seeks an award of costs pursuant to Fed. R. Civ. P. 54 (d)(1) and D.C. COLO.LCivR 54.1.  The latter will be reflected in an Amended Final Judgment.

2.  Plaintiff Ceco Concrete Construction, LLC's Motion to Amend the Judgment to Identify a Definite Judgment Amount [ECF No. 46] is GRANTED.  An Amended Final Judgment will issue.

3.  Defendant/Counter-Plaintiffs Centennial State Carpenters Pension Trust and its Board of Trustees' Motion for Stay Pending Appeal [ECF No. 53] is GRANTED.  Enforcement of the

Court's Amended Final Judgment is hereby stayed pending the conclusion of the pending appellate process.  No supersedeas bond is required as a condition of the stay.

    DATED this 2nd day of June, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge